IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CYNTHIA WEISMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-009 |
| MARYLAND-NATIONAL CAPITAL PARK & PLANNING COMMISSION, et al., | * * | |
| Defendants. | | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Maryland-National Capital Park & Planning Commission ("the Commission") and Darryl W. McSwain's (collectively, "Defendants") Motion to Dismiss (ECF No. 7). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion to Dismiss.

## I.   BACKGROUND[1]

### A.   Factual Background

Plaintiff Cynthia Weisman, who self-identifies as female, lesbian, and Jewish, joined the Commission in November 2001 as a Park Police Officer. (Compl. ¶¶ 1, 11, ECF No. 1). In 2022, Weisman served as Police Lieutenant of Internal Affairs ("IA") Commander at the Commission. (Id. ¶ 12). On March 14, 2022, Defendant Darryl

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

McSwain, who at the time served as Chief of Police, called Weisman into his office and questioned her about allegations that had been brought to his attention regarding Weisman's conduct. (Id. ¶¶ 9, 12). Shortly after this conversation, on March 17, 2022, McSwain reassigned Weisman to the role of Midnight Patrol Commander, effective March 20, 2022. (Id. ¶ 13). McSwain informed Weisman that the reassignment was non-disciplinary. (Id.).

On October 12, 2022, the Commission issued a "Administrative Disciplinary Action" to Weisman with five charges. (Id. ¶ 14). Under the terms of an October 17, 2022 Plea Agreement that the Commission and Weisman reached, Weisman pleaded guilty to one charge of "Unbecoming Conduct." (Id. ¶ 15). Weisman did not request for a hearing board to review the investigation "because she did not dispute that she made the comment at issue." (Id. ¶ 16). The Plea Agreement provided that: "Lt. Weisman shall be demoted to the rank of sergeant, as well as any and all supplemental training deemed necessary at the sole discretion of Chief Darryl McSwain." (Id. ¶ 17).

On October 21, 2022, the Commission issued Weisman a Notification (the "Notification") containing additional restrictions that Weisman alleges McSwain created. (Id. ¶ 18). Notably, none of the restrictions directed Weisman to obtain "supplemental training," but instead prohibited Weisman from, among other things, (1) interacting with "any known complainants;" (2) entering the IA office or interacting with IA staff; (3) entering the Communications Dispatch area of Headquarters; and (4) obtaining overtime work. (Id. ¶¶ 18–33).

Weisman takes issue with all the restrictions. With respect to the first restriction, Weisman alleges that she only knew one of the "known complainants," so she did not know whom to avoid. (Id. ¶ 23). The second restriction also created challenges because, although Weisman "had been reassigned to Policy & Planning," she was prohibited from entering the IA office or interacting with its staff, so "she was not able to proceed with anything related to policy." (Id. ¶ 24). The third restriction was similarly challenging because Weisman "could not remain CJIS compliant as part of her job without accessing the Dispatch Center." (Id. ¶ 25). For the fourth restriction, Weisman alleges that "when overtime was available for dispatch coverage, [she] was no longer eligible to apply for and obtain that overtime." (Id. ¶ 26). For all the named restrictions, Weisman alleges "[n]o similarly situated male employee was restricted in this manner. No similarly situated non-lesbian employee was restricted in this manner. No similarly situated non-Jewish employee was restricted in this manner." (See id. ¶¶ 23–26, 28).

Around the same time, Weisman also had issues involving the timing of her disability leave. Weisman was scheduled to begin disability leave on November 4, 2022. (Id. ¶ 29). Defendants restricted Weisman from recertifying her mandatory rifle training prior to starting her leave. (Id. ¶ 30). If Weisman did not recertify her mandatory rifle training prior to starting her leave, "her certification would lapse while she was out on disability leave, and she would have to take the entire week-long certification course again, rather than just a half-day recertification course." (Id.). Weisman needed to be certified to use a rifle to meet the certification requirements of her job. (Id.). Weisman alleges "[n]o similarly situated male employee was restricted from recertifying in this manner. No

3

similarly situated non-lesbian employee was restricted from recertifying in this manner. No similarly situated non-Jewish employee was restricted from recertifying in this manner." (Id.).

Weisman additionally alleges that the Commission had no justification for requiring her to return Commission-owned property three days before she started her disability leave because there was no policy authorizing or requiring the Commission to handle property return in this matter. (Id. ¶¶ 31–32). Weisman alleges that officers Lt. John Fellers, who went on disability leave before Weisman, and Ofc. John Wigmore, who went on disability leave after Weisman, "were not asked to turn in their badges, credentials, weapons, and [sic] the like three (3) days prior to the start of their respective periods of disability leave" and that "no similarly situated non-lesbian or non-Jewish employee was asked to return their requirement three days before the start of their disability leave." (Id. ¶ 33).

### B. Procedural History

On May 16, 2023, Weisman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 5). The EEOC issued a Right to Sue Letter on December 20, 2023. (Id. ¶ 6). On January 3, 2024, Weisman filed a Complaint against the Commission and Defendant Darryl W. McSwain. (Id. ¶ 1). The twelve-count Complaint alleges discrimination based on sex, religion, and sexual orientation, along with a hostile work environment claim, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b) (Counts I, IV, VII) against the Commission; discrimination based on sex, religion, and sexual orientation, along with a hostile work environment claim, in violation of the Maryland Fair Employment Practices

Act ("MFEPA"), Md. Code Ann., State Gov't. Code § 20-606(a) (Counts II, V, VIII) against the Commission; and discrimination based on sex, religion, and sexual orientation, along with a hostile work environment claim, in violation of Montgomery County Code ("MCC") § 27-19 (Counts III, VI, IX) against the Commission. The Complaint also alleges discrimination based on sex, sexual orientation, and religion, along with a hostile work environment claim, in violation of MCC § 27-19 (Counts X, XI, Count XII) against McSwain. On January 22, 2024, Defendants filed a Motion to Dismiss. (ECF No. 7). Weisman filed her Opposition on February 5, 2024. (ECF No. 8). On February 16, 2024, Defendants filed a Reply. (ECF No. 9).

## II. DISCUSSION

### A. Title VII, MFEPA, and MCC claims[2]

Counts I, IV, and VII of Weisman's Complaint alleges discrimination based on sex, religion, and sexual orientation, as well as a hostile work environment in violation of Title

---

[2] As noted, Counts II, V, and VIII of Weisman's Complaint allege discrimination based on sex, religion, and sexual orientation, along with a hostile work environment claim, in violation of the MFEPA against the Commission. Weisman also brings claims of discrimination under MCC § 27-19 for discrimination on the basis of her gender, sexual orientation, and religion against the Commission, along with a hostile work environment claim, (Counts III, VI, IX), and asserts the same MCC claims against McSwain individually and in his official capacity as Commission Chief, (Counts X, XI, XII).
  The MFEPA is the Maryland state analogue of Title VII and federal courts apply Title VII caselaw in adjudicating MFEPA claims. See Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc., 921 F.Supp. 2d 470, 483 n.20 (D.Md. 2013) ("[M]FEPA claims of discrimination are analyzed under the same framework as Title VII."). Maryland courts also apply Title VII caselaw to claims brought under Chapter 27 of the Montgomery County Code. See Tagai v. Holy Cross Health, Inc., No. 8:18-01742-PWG, 2019 WL 13260332, at *3 (D.Md. Nov. 12, 2019) ("Claims under . . . Chapter 27 of the Montgomery County Code are analyzed using the same McDonnel Douglas framework as Title VII claims.").

VII against the Commission. (Compl. ¶¶ 34–40, 55–61, 76–82). The Commission argues that Weisman's claims must be dismissed because she fails to show the alleged discriminatory conduct was "because of her membership in a protected class." (Defs.' Mem. Supp. Mot. Dismiss ["Mot. Dismiss"] at 4, ECF No. 7-1). The Court agrees for the reasons explained below.

### 1. Discrimination

Title VII prohibits an employer from discriminating against employees due to race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged

---

The Court notes that the two main differences between Title VII and MCC ¶ 27-19 is that the MCC appears to provide a path for individual liability while Title VII and MFEPA do not. In any event, the Court agrees with the Commission that "the basis of each of Plaintiff's claims is identical," (Mot. Dismiss at 4), so this distinction does not change the Court's analysis. The other difference that Weisman identifies is that for hostile environment claims, the MCC only requires "the complained of conduct must be 'based on' – not 'but for'" a plaintiff's protected status. (Pl.'s Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 7–8, ECF No. 8). The Court uses a "based on" standard even under Title VII. In any event, even with this distinction, the Court's analysis remains the same. Accordingly, the Court's analysis of Weisman's Title VII claims shall constitute its analysis of her MFEPA and MCC claims.

discriminatory attitude and that bear directly on the contested employment decision.'") (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999)). Accordingly, the Court will evaluate Weisman's claim under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a discrimination or retaliation claim under the McDonnell Douglas burden-shifting framework, Weisman must eventually put forth a prima facie case by establishing that:

> (1) she belongs to a protected class;
> (2) she suffered an adverse employment action;
> (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations . . . ; and
> (4) she was rejected [or disciplined] under circumstances giving rise to an inference of unlawful discrimination.

See Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," McDonnell Douglas, 411 U.S. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Weisman succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 510 ("The prima

facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558. This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Court considers the "totality of the circumstances" in determining whether Weisman has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:2059, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his

termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Here, Weisman satisfies the first element because she self-identifies as Jewish, female, and lesbian. (Compl. ¶ 1). Regarding the second element, an adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 122 (4th Cir. 2021) (quoting Chang Lim v. Azar, 310 F.Supp.3d 588, 601 (D.Md. 2018)). Weisman takes issue with three decisions the Commission made: (1) the restrictions imposed in the Notification; (2) the timing of her disability leave; and (3) the return of property. (Compl. ¶¶ 18–33). Accepting the facts in the Complaint as true, the Court is satisfied that Weisman adequately alleges the second element of adverse action because, taking the facts in the light most favorable to Weisman, all the employment decisions she contests appear to have worsened the conditions of her employment. (Id.).

Weisman fails to satisfy the third element, however, because she does not allege that "at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations." See Adams, 640 F.3d at 558. The three alleged adverse actions—the restrictions imposed as part of the Notification, the rifle recertification issue, and the return of property issue—all occurred in October and November, 2022. (Compl. ¶¶ 18–33). There's nothing in Weisman's Complaint that suggests she was meeting her employer's expectations at this time. Indeed, as Defendants note, and the Court agrees, Weisman "has not alleged satisfactory work performance,

9

which would be belied by the demotion in any case." (Mot. Dismiss at 10–11 n.9). In her Opposition, Weisman does not address this argument. (See generally Opp'n).

The Court also finds that Weisman fails to satisfy the fourth element that she was reprimanded or otherwise subjected to restrictions under circumstances giving rise to an inference of unlawful discrimination. Throughout her Complaint, Weisman relies on comparator evidence to support her discrimination claims. For instance, Weisman explains that one of the restrictions prohibited her from "seeking out, interacting with, and/or contacting 'any known complainants.'" (Compl. ¶ 23). Weisman alleges that no similarity situated male-employee, non-Jewish employee, or non-lesbian employee was restricted in this manner. (Id.). For reasons explained below, the Court finds this comparator evidence insufficient to support a discrimination claim.

Scrutiny of comparator evidence typically does not occur at the Rule 12(b)(6) stage of litigation. See Holloway v. Maryland, 32 F.4th 293, 298–99 (4th Cir. 2022) (citations omitted). Nevertheless, a plaintiff who relies on comparators to plead a plausible claim of discrimination "must identify the proposed comparator and 'establish a plausible basis for believing [the plaintiff and proposed comparator were] actually similarly situated.'" Asi v. Info. Mgmt. Group, Inc., No. GLR-18-3161, 2019 WL 4392537, at *6 (D.Md. Sept. 13, 2019). Employees are similarly situated when they "dealt with the same supervisor, were subject to the same standards, . . . and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 F.App'x. 355, 359 (4th Cir. 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Here, although Weisman's Complaint alleges in a conclusory fashion that the Commission imposed restrictions and took other actions because of her sexual orientation, gender, and religion, it does not assert facts supporting the plausibility of those allegations. As noted, Weisman repeatedly alleges that no similarity situated non-lesbian, non-female, and non-Jewish employee suffered from the same adverse actions, but she fails to identify whether these employees dealt with the same supervisor, were subject to the same standards, or were also demoted or otherwise reprimanded. See Coleman, 626 F.3d at 191. For instance, Weisman contends that she "identified two male comparators who were not required to turn in their badges, credentials, weapons and [sic] the like three (3) days prior to the start of their leave." (Opp'n at 6). Beyond identifying the comparators as male employees who also took disability leave, Weisman does not plead facts to plausibly allege that the two male comparators were similarly situated. Nor does Weisman plead facts to plausibly allege that the Commission made the decision to implement these restrictions because of Weisman's membership in a protected class or classes.

At bottom, Weisman does not support her conclusory assertions that the allegedly adverse actions were based on her religion, gender, or sexual orientation with sufficient facts. Accordingly, the Court finds that Weisman fails to plead a claim for relief of discrimination under Title VII, MFEPA, and the MCC against the Commission or McSwain.

### 2. Hostile Work Environment

Weisman's hostile work environment claims fare no better. To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is

11

based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)). A hostile environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment[.]'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations omitted).

Weisman satisfies the first element because she pleads sufficient facts to plausibly allege that the three main employment decisions at issue constitute unwelcome conduct. To satisfy the second element of a hostile work environment claim, Weisman must plead that she was discriminated against "because of" her protected class. Smith v. First Union Nat. Bank, 202 F.3d 234, 242 (4th Cir. 2000). Weisman fails to satisfy the second element because, for reasons already explained under the discrimination context, she fails to plausibly allege that the unwelcome conduct—in this case, the restrictions imposed in the Notification; the issues with her disability leave; and the way in which she had to return her property—was based on her sexual orientation, religion, or gender.

The Court also notes that Weisman fails to plausibly allege that the conditions were so "severe" to satisfy the third element of a hostile work environment claim. In determining whether the offending conduct was sufficiently severe or pervasive, the court must consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it

unreasonably interferes with an employee's work performance." Whittaker v. David's Beautiful People, Inc., No. DKC 14-2483, 2016 WL 429963, at *4 (D.Md. Feb. 4, 2016) (quoting Smith v. First Union Nat. Bank, 202 F.3d 234, 242 (4th Cir. 2000)).

Here, Weisman's strongest claim falls under the fourth factor because she plausibly alleges that the restrictions interfered with her ability to do her job. (See e.g., Compl. ¶ 24) ("As Plaintiff had been reassigned to Policy & Planning, she was not able to proceed with anything related to policy since she was barred from entering the IA Office and from seeking out, interacting with and/or contacting IA's staff."). Weisman's claims, however, fail under the first, second, and third factors because of the minimal severity of the alleged hostility. Weisman alleges her work environment was severe because of the "ridiculous restrictions as set forth in the Notification, prohibiting her from . . . obtaining timely rifle recertification, and requiring her to return her. . . property while on active duty." (Opp'n at 6). As Defendants note, however, the restrictions came with exceptions. (Mot. Dismiss at 9–10). For example, Weisman could enter a prohibited area if there was a compelling need. (Id.). Relatedly, while undergoing a week-long course rather than a half-day recertification is "[a]n inconvenience, perhaps, [this] can hardly be considered by any reasonable, objective person to be severe or pervasive or to 'constitute a significant change in employment status.'" (Id. at 8.). Further, while Weisman alleges that she could not perform her job once she returned all her equipment, she concedes that she returned her property only three days before she went on disability leave. (Opp'n at 6). Three days is a minimal amount of time, and while Weisman alleges there is no Commission policy

13

authorizing property return in this manner, she also does not identify any policy prohibiting this practice.

In general, employers seek to create healthy and safe working environments while ensuring employees are held accountable for wrongdoing. Here, the Commission's restrictions which, for example, prohibited Weisman entering certain areas and from contacting "known" complainants, all appear to be efforts to balance those competing interests. While attending a week-long recertification course instead of a half-day one, adhering to other various restrictions, and being forced to return all work property before going on leave are inconvenient, none of these actions are plausibly tied to Weisman's protected classes and do not rise to the level of severity or pervasiveness required to state a hostile environment claim. See Ziskie v. Mineta, 547 F.3d 220, 226 (4th Cir. 2008) (recognizing that hostility must be tied to a plaintiff's [protected class]). Accordingly, Weisman's claims for discrimination and hostile work environment under Title VII, MFEPA, and the MCC will be dismissed.[3]

---

[3] Weisman never formally moved to amend her Complaint but includes the request in the Conclusion of her Opposition. (Opp'n at 8). While Federal Rule of Civil Procedure 15 requires that leave to amend "shall be freely given when justice so requires," a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). The Court declines to grant leave to amend because Weisman has not shown how amendment would cure deficiencies in the Complaint. See Willner v. Dimon, 849 F.3d 93, 114 (4th Cir. 2017) ("'[W]here, as here, the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court [does] not abuse its discretion' in denying leave to amend.") (quoting Estrella v. Wells Fargo Bank, N.A., 497 F.App'x. 361, 362 (4th Cir. 2012)). In any event, the Court grants the Motion to Dismiss without prejudice.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss (ECF No. 13).

A separate Order follows.

Entered this 12th day of August, 2024.

/s/
George L. Russell, III
United States District Judge